Steven L. Taggart, ISB No. 8551
**OLSEN TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: staggart@olsentaggart.com

*Counsel for Debtor/Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 23-40578-NGH |
| 4G PROPERTIES, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

**PLAN OF REORGANIZATION**

4G Properties, LLC, ("4G Properties" and "Debtor") proposes the following *Plan of Reorganization* ("Plan"). This Plan treats all of the assets of the Debtor and proposes a resolution of the outstanding claims against it. This Plan will contain a discussion of Debtor's assets, business model, liquidation alternatives, and proposed resolution of outstanding claims.

Debtor urges all holders of claims to read this Plan in its entirety before voting to accept or reject this Plan. It is important that you read this Plan carefully to evaluate the impact such Plan will have upon your claim or interest.

**BRIEF HISTORY OF DEBTOR'S BUSINESS OPERATION**

4G Properties, LLC owns an approximately 5-acre piece of property in Rupert, Idaho containing three facilities: 1) a meat processing one, with the ability to slaughter and process meat, and an affiliated retail operation 2) a separate shop; and 3) a stick-built home ("Property"). The principal is Brian Jensen whose father opened the meat operation and originally bought the Property. Today Mr. Jensen is the owner of the Debtor and Jensen

Meat Company, LLC ("Jensen Meat"), the meat plant operator.  The Debtor is the 100%

owner of Fusion Metalworks LLC ("Fusion Metalworks"), which builds custom trailers

and which was acquired last year, and was relocated from Caldwell. Mr. Jensen also

occupies the home on the property.

Historically, Jensen Meat had an oral lease with the Debtor, paid for the expenses

of the Property, and provided revenue to the Debtor to meet its financial obligations.  The

meat side slowed down and Jensen was unable to make the payments necessary to pay the

lender on the Property, Hopkins Mortgage Fund, LLC. That lender commenced foreclosure

which precipitated the bankruptcy filing. In addition, two parties had provided work on the

Debtor's Property and were not paid as of filing.

The Debtor is now in the position to resolve its outstanding financial issues. Jensen

Meat has entered into an agreement with a third party to do additional work which has

stabilized and enhanced its cash flow.  Fusion Metalworks is now generating revenue in

Rupert by building custom trailers.  Both entities are willing to commit to provide the funds

to make the required plan payments as enumerated below.

## EXECUTIVE SUMMARY

The Debtor's financial obligations can be broken into three elements and are

addressed in the Plan as follows:

- As to Hopkins:

    - Reinstate monthly payments on the loan obligation; and

    - Make up the outstanding default over 24 months calculated as of the

      Effective Date.

- As to the two parties who provided work on the Property, Orton Industries and S&S Sporting Goods, their joint outstanding balances will be paid in full over 12 months after the Effective Date.

- Administrative expenses of the bankruptcy will be paid for as provided below.

Accompanying this Plan are copies of the following documents:

|  |  |
|---|---|
| APPENDIX A: | The ballot form for acceptance or rejection of the Plan of Reorganization |
| APPENDIX B: | Debtor Agreements with Jensen Meat Company, LLC and Fusion Metalworks LLC to pay Debtor Plan payments and related obligations |
| APPENDIX C: | Monthly Operating Reports and the 2015.3 report have been filed with the Court as required by the Chapter 11 Bankruptcy Code and the U.S. Trustee Guidelines and will not be attached here to avoid unnecessary duplication of paperwork. |
| APPENDIX D: | Liquidation Analysis |
| APPENDIX E: | Plan Reorganization Budget |

**ARTICLE I.**
**DEFINITIONS, RULES OF INTERPRETATION**
**AND COMPUTATION OF TIME**

**1.1 Scope of Definitions; Rules of Construction.**

Except as expressly provided or unless the context otherwise requires, capitalized terms used but not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.2 Definitions.**

1.2.1   "Administrative Claim" means a claim for the cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

1.2.2   "Administrative Claims Bar Date" shall have the meaning given it in Article 13.1.1 of this Plan.

1.2.3   "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Debtor, or (e) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable law.  Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims, interest on such claim or claims accruing from or after the Petition Date.

1.2.4   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11, Subchapter V case.

1.2.5   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho or any other court with jurisdiction over Debtor's Chapter 11, Subchapter V case.

1.2.6   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11, Subchapter V case.

1.2.7   "Business Day" means any day on which commercial banks are open for business in Idaho Falls, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

1.2.8   "Class" means one of the classes of claims listed in Article II of this Plan.

1.2.9   "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.10  "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11, Subchapter V case.

1.2.11  "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 1191 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.12  "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1191 of the Bankruptcy Code.

1.2.13  "Debtor" means 4G Properties, LLC and includes it in its capacity as Debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.14  "Disputed Claim" means any claim against or Interest in Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.15  "Effective Date" means the Second Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.16  "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.17  "General Unsecured Claim" means a pre-petition unsecured claim against Debtors that are not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.18  "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.19  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.20  "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.21  "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.22  "Petition Date" means December 13, 2023, the date on which Debtor filed its petition for reorganization relief commencing the Chapter 11, Subchapter V case.

1.2.23  "Plan" means this Reorganization Plan proposed by Debtor, together with all exhibits hereto, as it may be further amended, modified or supplemented from time to time in accordance with section 1127 and 1190 of the Bankruptcy Code, including Plan Supplements, if any.

1.2.24  "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that may be filed with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the Confirmation Hearing.

1.2.25  "Plan Termination Date" means the future date on which all obligations under this Plan are anticipated to be fully carried out.

1.2.26  "Post-Effective Date Assets" means all property of the kind defined in Section 541, as limited by all subsections of Section 541, of the Bankruptcy Code.

1.2.27  "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

1.2.28  "Professional Fee Claims" shall have the meaning given it in Article 13.1.2 of this Plan.

1.2.29  "Proponent" means Debtor.

1.2.30  "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtors have an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such claim.

1.2.31  "Setoff Claim" means a claim of holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as by a Final Order or as otherwise agreed writing by the Debtor, to the extent of the amount subject to such right of setoff.

1.2.32  "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

**1.3    Rules of Interpretation.**

In this Plan (a) any reference to a contract, instrument, release, indenture or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions; (b) any reference to an existing document or exhibit means that document or exhibit as it may have been amended, modified or supplemented; (c) unless otherwise specified, all references to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are for convenience and ease of reference only and are not intended to be a part of or to impact interpretation of this Plan; and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4    Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTEREST

**2.1    Introduction.**

All claims, except administrative claims and priority tax claims, are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code.

Administrative claims and priority tax claims, as described below, have not been classified and are not entitled to vote on this Plan. A claim is placed in a particular Class only to the extent that the claim falls within the description of that Class and is classified in other Classes to the extent that any portion of the claim or Interest falls within the description of such other Classes. A claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such claim is an Allowed Claim in that Class and such claim has not been paid, released, waived or otherwise settled prior to the Effective Date.

All allowed claims and allowed interests have been placed in the following classes:

**2.2.    Unclassified Claims (not entitled to vote on the Plan).**

  2.2.1    Administrative Claims as set forth in 3.1 below.

  2.2.2    Priority Tax Claims as set forth in 3.2 below.

**2.3    Unimpaired Claims (deemed to have accepted the Plan).**

  2.3.1    None.

**2.4    Impaired Claims (entitled to vote on the Plan).**

  2.4.1    All impaired classes are set forth in Section 3.2 – 3.4 below.

**2.5    Equity Interests (not entitled to vote on the Plan).**

  2.5.1    Equity interests are set forth in 3.5 below.

**ARTICLE III.
TREATMENT OF CLAIMS AND INTERESTS**

**3.1    Administrative Claim – Class AC1.**

Each holder of an Allowed Claim that is an administrative claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such allowed administrative claim, cash equal to the unpaid portion of such allowed administrative claim on or as soon as reasonably practicable after the latest of (a) ninety (90) days following the Effective Date, (b) the date that is five (5) Business Days after the date an administrative claim becomes an Allowed Claim, or (c) the date that is five (5) Business Days after the date an administrative claim becomes payable pursuant to any agreement between the Debtor and the holder of an administrative claim, except as otherwise provided for in the Plan, and subject to the requirements of Article 13.1.2 of the Plan for Professional Fee Claims and substantial contribution claims, and provided that the Plan not be approved as a nonconsensual Plan under Section 1191(b).

Class AC1 is comprised of the following:

1) the law firm of Olsen Taggart PLLC, whose employment application was filed on December 15, 2023 (Doc. 12),

2) Case Trustee, Matt Grimshaw, who was appointed as case trustee on December 14, 2023, (Doc. 10) pursuant to 11 U.S.C. § 1183(a), and

3) Debtor's accountant who will be filing an application with the Court.

### 3.2    Priority Claim—Class PC1 (Taxes)

There are believed to be no applicable tax claims. If any claim does arise before or after Confirmation, such shall be paid by the Debtor within 90 days of the presentment of the same to the Debtor after the Effective Date.

### 3.3    Secured Claim – Class SC1 (Hopkins Mortgage Fund, LLC)

This claim relates to the loan for Debtor's Property in Rupert, Idaho. Hopkins filed Proof of Claim No. 1 in the amount of $437.578.42. The Property secures this claim.

This claim shall be paid by the Debtor both addressing the arrearage and reinstating payments as follows:

#### 3.3.1    Amount in Default

Hopkins shall update the Amount in Default as of the Confirmation Order. The Debtor shall then pay the updated amount by dividing the same into 24 equal monthly payments and begin making monthly payment the next month after the Effective Date on the 15th day of each month, through the Case Trustee or his designee if the plan is nonconsensual or directly by the Debtor if the plan is consensual until paid in full.

#### 3.3.2    Reinstatement of Payments

The Debtor shall commence making payments the 13th day of the month following the Effective Date in the amount of $4,011.59 per month as provided in the Promissory Note signed between the Debtor and Hopkins on June 13, 2022 and the terms will be as if the Debtor had not defaulted. Payments will be through the Case Trustee or his designee if the plan is nonconsensual or directly by Debtor if the plan is consensual.

#### 3.3.3    Effect of Existing Loan Documents

All other loan documents between the Debtor and Hopkins shall remain in force except as modified in 3.3.

### 3.3.4 Debtor Default

In the event that Debtor defaults in making the specified payments for more than 60 days, Hopkins shall have the right to start its foreclosure process at the point it was stopped by the bankruptcy filing without seeking bankruptcy court approval.

## 3.4    General Unsecured Claims Class 1 – Class UC1

Such claims are the claims of Orton Industries in the amount of $7,000.00 for work on the well on the Property and S&S Sporting Goods in the amount of $9,500.00 for corral work on the Property.

Such will be paid by dividing the total amount by 12 and including interest of 6% from the Effective Date, and paying the amount then due over 12 months, by the 15th of each month, beginning the month after the Effective Date.  Payments will be through the Trustee if the plan is nonconsensual or directly by the Debtor if the plan is consensual.

By the Effective Date, the Debtor will place with his counsel, to be held in his trust account, two months of payments to this class.  In the event that Debtor defaults in making the specified payments for more than 60 days, the individual creditors in this class may request the amount in the trust account pro-rated between their claim sand Debtor's counsel shall be obligated to turn over the same. In that event these creditors can do so without seeking bankruptcy court approval.  Once these creditors are paid in full, the funds remaining, if any, will be replaced back to the Debtor.

## 3.5 Equity Claims – Class E1

Brian E. Jensen, Sr. shall retain his ownership interest in the Debtor and shall continue to manage the Debtor, at his discretion, as long as the Plan is complied with and fulfilled.

## ARTICLE IV.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

## 4.1    Assumed Contracts and Leases.

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, as of the Effective Date, Debtor shall be deemed to have assumed each executory contract and unexpired lease to which they are a party, unless such contract or lease was (i) previously expired, or terminated pursuant to its own terms, or (ii) rejected as a matter of law pursuant to 11 U.S.C. § 365, or (iii) is the subject of a motion to reject filed on or before the Confirmation Date; provided, however, that Debtor reserves the right, at any time prior to

the Confirmation Date, to seek to reject any executory contract or unexpired lease to which a Debtors are a party. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease rejections described elsewhere herein, as of the Effective Date.

The following agreements are accepted by the Debtor on Confirmation:  Agreement with Jensen Meat Company, LLC, attached hereto as Appendix "B".

**4.2     Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

If the rejection by Debtor, pursuant to this Plan or otherwise, of an executory contract or unexpired lease results in a claim for damages, THEN SUCH CLAIM SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST THE BANKRUPTCY ESTATE AND THE REORGANIZED DEBTOR, UNLESS A PROOF OF CLAIM IS FILED WITH THE CLERK OF THE BANKRUPTCY COURT AND SERVED ON COUNSEL FOR DEBTOR WITHIN THE EARLIER OF THIRTY (30) DAYS AFTER SERVICE OF THE EARLIER OF (I) NOTICE ENTRY OF THE CONFIRMATION ORDER OR (II) OTHER NOTICE THAT THE EXECUTORY CONTRACT OR UNEXPIRED LEASE HAS BEEN REJECTED.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1     Cash Disbursements**

5.1.1    Payment of Administrative Expenses and Professional Fees.

All Administrative Expenses and Professional Fees shall be paid, upon Court approval, pursuant to the terms and conditions contained in Articles 13.1.1 and 13.1.2 from funds received by the Debtor from Jensen Meats and Fusion Metalworks pursuant to Appendix "B".

5.1.2    Monthly Disbursement

The Debtor shall receive funds for its monthly disbursements from Jensen Meats and Fusion Metalworks sufficient to meet those obligations as specified in the Agreements attached in Appendix "B"

**5.2     Post-Effective Date Assets.**

All Post-Effective Date Assets shall be retained by the Debtor except as set forth herein.

### 5.3     Exemption from Certain Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer from Debtor to any other Person or entity pursuant to a sale or transfer authorized by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.4     Transaction on Business Days.

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### 5.5     Implementation.

Pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, in accordance with its terms. On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein. Debtor shall execute such documents and take such other actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, lien releases, authorizations or consents.

### ARTICLE VI.
### ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1     Classes Entitled to Vote.

Each impaired Class of claims under this Plan is entitled to vote to accept or reject this Plan.  By operation of law, each unimpaired Class of claims, if any, is deemed to have accepted this Plan and, therefore, is not entitled to vote.

### 6.2     Acceptance by Impaired Classes.

An impaired Class of claims shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan, in each case not counting

the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

### 6.3    Elimination of Classes.

Any Class that does not contain, as of the date of the commencement of the Confirmation Hearing, any Allowed Claims or Interests or any claims temporarily allowed for voting purposes under Fed. R. Bankr. P. 3018 shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    Time of Distribution for Claims.

Distributions shall be paid as described previously.

### 7.2    Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class of claims under this Plan shall be treated first, as satisfying the stated principal amount of each holder's Allowed Claim and second, to the extent of any remaining consideration, as satisfying accrued but unpaid interest, if any, and, then, any other remaining charges.

### 7.3    Means of Cash Payment.

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor or the Case Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor or the Case Trustee, as applicable. Cash payments to foreign creditors, if any, may be made, at the option, and in the sole discretion, of the Debtor or the Case Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Debtor or the Case Trustee, as applicable, shall be null and void if not cashed within sixty (60) days of the date of the issuance thereof.

### 7.4    Fractional Dollars; *De Minimis* Distributions.

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Debtor or the Case Trustee, as applicable, shall not make any payment of less than $100.00 with respect to any claim unless a request therefore is made in writing to the Debtor.

**7.5    Delivery of Distributions; Undeliverable or Unclaimed Distributions; No Requirement to Surrender Certificates.**

Distributions to holders of Allowed Claims shall be made by the Debtor or the Case Trustee, as applicable, (i) at the holder's last known address, (ii) at the address in any written notice of address change delivered to the Debtor, or (iii) at the address shown in a duly filed Notice of Transfer under Bankruptcy Rule 3001. If any holder's distribution is returned as undeliverable, is unclaimed or such holder fails to cash a check within ninety (90) days of its issuance, such distribution shall be deposited with the Bankruptcy Court as unclaimed funds.

**7.6    Withholding and Reporting Requirements.**

In connection with this Plan and all distributions hereunder, the Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

**8.1    Objections to Claims; Disputed Claims**

No later than as soon as practicable after the Effective Date, the Debtor shall file objections, if any, to proofs of claim with the Bankruptcy Court. Notwithstanding any provision of this Plan to the contrary, the Debtor shall have the right and standing to process and bring on for final hearing claims objections filed during the term of the Plan.

**8.2    No Distribution Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim. Pending the Court determination on disallowance, the Debtor shall reserve any portion of plan distributions otherwise attributable to such disputed claim if it were allowed by distributing to the Trustee. Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, such formerly Disputed Claim will receive the portion of reserved plan payments held by the Debtor attributable to such claim.

**8.3    Estimation of Claims; Distribution Reserve.**

### 8.3.1    Estimation of Claims.

Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtor has previously objected to such claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated claim, that estimated amount will constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim.  All of the aforementioned claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4    Distribution After Allowance/Disallowance.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, all future distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Debtor, directly or through the Case Trustee, as applicable, shall provide to the holder of such claim the future distributions to which such holder is entitled under this Plan.  To the extent that any Disputed Claim is ultimately disallowed the monies reserved by the Debtor pending final determination as to the allowance/disallowance of such disallowed claim shall be distributed to other Classes according to this Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

### 9.1    Conditions to Effective Date.

The following are conditions precedent to the occurrence of the Effective Date that must be (i) satisfied or (ii) waived in accordance with Article 9.2 below:

9.1.1    The Confirmation Date shall have occurred and the Confirmation Order confirming this Plan, as the same may have been modified, supplemented or amended, shall have been entered by the Bankruptcy Court.

9.1.2    The Confirmation Order shall have become a Final Order.

**9.2    Waiver of Conditions.**

The condition set forth in Article 9.1 above may be waived in whole or in part by the Debtor, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE X.
## MODIFICATIONS AND AMENDMENTS

The Debtor may alter, amend or modify this Plan or any exhibits thereto under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended exhibits in this Plan or the Plan Supplement.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, Debtor's Chapter 11 case and this Plan to the fullest extent permitted by law, including, by way of illustration and not limitation, jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity or amount of any claim or Interest, including, but not limited to, the resolution of any request for payment of any administrative claim, the resolution of any objections to the allowance or priority of claims, and the resolution of any adversary proceeding or contested matter to subordinate any claim or Interest under section 510 of the Bankruptcy Code or otherwise;

(b)    Hear and determine all applications for compensation and reimbursement of expenses of professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(c)    Hear and determine all applications for compensation and reimbursement of expenses by the Debtor's professionals and the Case Trustee as described by this Plan.

(d)    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any claims arising therefrom;

(e)    Effectuate performance of and payments under the provisions of this Plan;

(f)    Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, Debtor's Chapter 11 case, including, but not limited to, any Avoidance Actions;

(g)    Hear and determine any and all motions to subordinate claims or Interests at any time and on any basis permitted by applicable bankruptcy or non-bankruptcy law;

(h)    Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Confirmation Order;

(i)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(j)    Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of this Plan or the Confirmation Order;

(l)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(m)    Hear and determine any matters arising in connection with or relating to this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order;

(n)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 case;

(o)    Recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(p)    Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(q)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(r)    Enter a final decree closing Debtor's Chapter 11 case.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

**12.1    Discharge.**

The rights afforded in this Plan shall be in exchange for and in complete satisfaction and release of all claims and Interests of any nature against Debtor or Debtor's properties, both prior to, and from and after, the commencement of this Chapter 11, Subchapter V case through the Confirmation Date; and, except as otherwise provided in this Plan, on the date that the Debtor completes all payments required under the Plan, as described in 11 U.S.C. Section 1192. Immediately thereafter Debtor shall be discharged from all debts as described in section 1192.

**12.2    Binding Effect.**

This Plan shall be binding on and inure to the benefit the Debtor, all current and former holders of claims against and interests in Debtors and their respective successors and assigns, and all other parties-in-interest in Debtors' Chapter 11 case.

**12.3    Exculpation.**

Debtor, and the agents, employees, attorneys, and accountants of the Debtor, and the Subchapter V Trustee, each acting solely in their capacities as such, shall not be liable to any holder of a claim against the Debtor for any act or omission in connection with or arising out of the administration of this Chapter 11 Case, including, without limitation, the negotiation, preparation and pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan except in each case for liability based on willful misconduct or gross negligence as finally determined by the Bankruptcy Court. The Debtor, and its agents, attorneys, and accountants, and the Subchapter V Trustee, each acting solely in their capacities, shall be entitled to rely, in every respect, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**12.4    Injunction.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN DEBTORS ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ANY SUCH CLAIM AGAINST OR INTEREST IN DEBTOR OR AGAINST THE PROPERTY DEALT WITH BY THIS PLAN, OR DEBTOR'S ESTATE; (2) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE PROPERTY DEALT WITH BY THIS PLAN OR DEBTOR'S ESTATE; AND (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OR ANY KIND AGAINST THE PROPERTY OR INTERESTS IN

PROPERTY OF THE DEBTOR'S ESTATE OR PROPERTY DEALT WITH BY THIS PLAN EXCEPT AS OTHERWISE PROVIDED HEREIN. FURTHER ALL CREDITORS FILING CLAIMS IN THIS PROCEEDING SHALL, ON THE EFFECTIVE DATE OF THE PLAN, BE REQUIRED TO DISMISS DEBTOR FROM ANY ACTION FILED IN ANY COURT.

INJUNCTION DOES NOT APPLY TO ANY CLAIMS AGAINST NON-DEBTOR 3RD PARTIES OR TO ANY CLASSES OR CREDITORS HEREIN IF DEBTOR'S CASE IS OTHERWISE DISMISSED PRIOR TO DISCHARGE.

### 12.5    Releases.

12.6.1  Nothing in this Plan shall release any Person (other than Debtor and the Debtor's estate as described in paragraph 12.4) from any claims, obligations, rights, Causes of Action, demands, suits, proceedings or liabilities based on any act or omission arising out of such Person's fraud, breach of fiduciary duty, malpractice, gross negligence or willful misconduct. The Debtor shall have the right to pursue such rights of action, including the rights under section 502(d) of the Bankruptcy Code as a defensive measure, including for purposes of setoff against distributions, if any, due to a holder of a claim or Interest pursuant to this Plan.

12.6.2  To the fullest extent permitted by applicable law, neither the Debtor, nor any of its attorneys, shall be liable or incur any liability to any holder of a claim against the Debtor for any act or omission in connection with, relating to, or arising out of, the Chapter 11 case, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan except in each case for their fraud, breach of fiduciary duty, gross negligence or willful misconduct, and in all respects the Debtor shall be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under this Plan.

### 12.6    Ambiguity and Integration.

12.7.1  Ambiguities.

Ambiguities and uncertainties in this Agreement, if any, shall not be interpreted against either party, irrespective of which party may be deemed to have caused the ambiguity or uncertainty to exist.

12.7.2  Counterparts; Integration; Effectiveness.

This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Plan, taken together with the Confirmation Order, constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Plan shall become effective on the

Effective Date as provided herein.  Delivery of an executed counterpart of a signature page of this Agreement by telecopy or other electronic imaging means shall be effective as delivery of a manually executed counterpart of this Agreement.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### 13.1    Bar Dates for Certain Claims.

13.1.1  Administrative Claims.

The Confirmation Order shall establish the "Administrative Claims Bar Date" for filing administrative claims (other than (i) claims previously allowed by the Bankruptcy Court, (ii) the claims of professionals employed in the cases ("Professional Fee Claims") and (iii) other claims for reimbursement), which date shall be thirty (30) days after the Confirmation Date.  Holders of asserted administrative claims, except for Professional Fee Claims or United States Trustee fees, whose claims were not paid prior to the Confirmation Date, shall submit requests for payment of administrative expenses on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date.  The Debtor shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such administrative claims before a hearing for determination of allowance of such administrative claims.

13.1.2  Professional Fee Claims; Substantial Contribution.

All final requests for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to Debtors prior to the Confirmation Date (including requests under section 503(b)(4) of the Bankruptcy Code by any professional or other entity for making a substantial contribution in Debtor's Chapter 11 case) shall be filed and served on Debtor and its counsel, the Subchapter V Trustee, and the Office of the United States Trustee, as well as those parties filing notices of appearance in these cases or otherwise requesting notice of such application, no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such professionals or other entities for compensation or reimbursement of expenses shall be filed and served on Debtor and its counsel, the Subchapter V Trustee, the Office of the United States Trustee, and the requesting professional or other entity within the time allotted by the Bankruptcy Rules.

### 13.2    Severability of Plan Provisions.

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or

provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.3    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### 13.4    Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect during the term of the Plan. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms, notwithstanding 11 USC §362(c).

### 13.5    Revocation, Withdrawal or Non-Consummation.

Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If Debtor revokes or withdraws this Plan or if Confirmation does not occur, or if the Confirmation Order is vacated, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any claim or Interest or Class of claims or Interests), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute a waiver or release of any claims by or against, or any Interests in, Debtor or any other Person; (b) prejudice in any manner the admission of any sort by Debtor or any other Person.

### 13.6    Plan Supplement.

Any and all exhibits, lists or schedules referred to herein but not filed with this Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least fourteen days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the

Bankruptcy Court during normal court hours. Holders of claims or Interests may obtain a copy of the Plan Supplement on written request to Debtor.

**13.7    Prepayment.**

The Debtor shall have the right to prepay any or all of the claims hereinabove set forth, without penalty.  No notice of prepayment shall be required.  In the event Debtor prepays any secured claim, or any portion thereof, the remaining balance of such secured claim shall be re-amortized for the term specific to such secured claim and the annual payment amount adjusted accordingly.

**13.8    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Idaho shall govern the construction and implementation of this Plan and any agreements, documents, and instruments reinstated or executed in connection with this Plan.


DATED:        March 12, 2024


4G PROPERTIES, LLC


*/s/ Brian E. Jensen, Sr.*
Brian E. Jensen, Sr.
Manager


OLSEN TAGGART PLLC

*/s/ Steven L. Taggart*
Steven L. Taggart
Debtor Attorney

Steven L. Taggart, ISB No. 8551
**OLSEN TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email:  staggart@olsentaggart.com

*Counsel for Debtor/Debtor-in-Possession*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | Case No. 23-40578-NGH |
| 4G PROPERTIES, LLC, | Chapter 11, Subchapter V |
| Debtor. | |

TO: _____

                (Name of Creditor)

       The plan referred to in this ballot can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interest in each class voting on the plan.  In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the plan if the Court finds that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191.

| | |
|---|---|
| PLAN OF REORGANIZATION | **APPENDIX "A"**<br>*(Ballot for Accepting or Rejecting Plan)* |

**To have your vote count you must complete and return this ballot**.

[*If holder of a secured claim*] The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $ _____, with a secured interest in _____ [*property of the Debtor in which security interest is claimed*],

       or

       [*If holder of general unsecured claim*] The undersigned, a creditor of the above-named Debtor in the unpaid principal amount of $ _____,

       **Check one box:**    **[   ] Accepts**       **[   ] Rejects**

the plan for the reorganization of the above-named Debtor.

Print or type name of business:    _____

          Signed:    _____

(If appropriate)    By:    _____

          As:    _____

       Address:    _____

                   _____

**THIS BALLOT MUST BE RETURNED TO THE BELOW ADDRESS, SO THAT IT IS RECEIVED ON OR BEFORE _____**.

Olsen Taggart PLLC
Attn: Steven L. Taggart, Esq.
P.O. Box 3005
Idaho Falls, ID 83403

| PLAN OF REORGANIZATION | APPENDIX "A" |
| --- | --- |
|  | *(Ballot for Accepting or Rejecting Plan)* |

# PLAN PAYMENT AGREEMENT

Jensen Meat Company, LLC and 4G Properties, LLC hereby agree on March 11, 2024 that:

Jensen Meat Company, LLC has reviewed the proposed bankruptcy Plan of Reorganization of 4G Properties, LLC and hereby agrees to be responsible for providing 50% of the amount of the payments under that plan to 4G Properties, LLC as specified in the Plan of Reorganization as part of its rent responsibilities related to the property it leases from 4G Properties, LLC.

In addition, Jensen Meat Company, LLC acknowledges it is responsible for the cost of maintenance of the portion of the property that it occupies and 50% of the property taxes and insurance.


JENSEN MEAT COMPANY, LLC



*/s/ Brian E. Jensen, Sr.*
BRIAN E. JENSEN, SR.
Manager



4G PROPERTIES, LLC



*/s/ Brian E. Jensen, Sr.*
BRIAN E. JENSEN, SR.
Manager


| PLAN OF REORGANIZATION | APPENDIX "B"<br><br>*(Debtor Agreements with Jensen Meat Company, LLC and Fusion Metalworks LLC to pay Debtor Plan payments and related obligations)* |
|---|---|

# PLAN PAYMENT AGREEMENT

Fusion Metalworks LLC and 4G Properties, LLC hereby agree on March 11, 2024 that:

Fusion Metalworks LLC has reviewed the proposed bankruptcy Plan of Reorganization of 4G Properties, LLC and hereby agrees to be responsible for providing 50% of the amount of the payments under that plan to 4G Properties, LLC as specified in the Plan of Reorganization as part of its rent responsibilities related to the property it leases from 4G Properties, LLC.

In addition, Fusion Metalworks LLC acknowledges it is responsible for the cost of maintenance of the portion of the property that it occupies and 50% of the property taxes and insurance.

FUSION METALWORKS LLC

\

*/s/ Brian E. Jensen, Sr.*
BRIAN E. JENSEN, SR.
Manager

4G PROPERTIES, LLC

*/s/ Brian E. Jensen, Sr.*
BRIAN E. JENSEN, SR.
Manager

| PLAN OF REORGANIZATION | APPENDIX "B" |
| --- | --- |
| | *(Debtor Agreements with Jensen Meat Company, LLC and Fusion Metalworks LLC to pay Debtor Plan payments and related obligations)* |

# Liquidation Analysis

| Category | Estimated Value | Debt | Liquidation Cost | Exemption | Net Equity |
|---|---|---|---|---|---|
| Cash | $100.00 | NA | NA | NA | $100.00 |
| Debtor Property | $389,997.40[1] | $437.578.42 | $31,198.19 | NA | -$78,779.21 |
| Debtor's Ownership of Fusion Metalworks, LLC | $94,983.17[2] | NA | Unknown | NA | $94,983.17[3] |
| | | | | | |
| Liquidation Value | | | | | $16,303.96 |

---

[1] Debtor Estimate
[2] Net number from 2015.3 Report, Doc. 23, pg. 13 after repayment of $60,000.00 obligation to Mr. Jensen.
[3] Unknown

| PLAN OF REORGANIZATION | APPENDIX "D" |
|---|---|
| | *(Liquidation Analysis)* |

# Reorganization Budget

| | June* 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 |
|---|---|---|---|---|---|---|
| From Jensen Meat | $5,128.76 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 |
| From Fusion Metalworks | $5,128.76 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 |
| TOTAL INCOME | $10,257.52 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 |
| | | | | | | |
| Hopkins Default Payment | $2,039.63** | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 |
| Hopkins Monthly Payment | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 |
| Payment to Orton Industries | $602.47 | $602.47 | $602.47 | $602.47 | $602.47 | $602.47 |
| Payment to S&S Sporting Goods | $817.63 | $817.63 | $817.63 | $817.63 | $817.63 | $817.63 |
| Funds held for UC1 | $2,840.20 | | | | | |
| Trustee | TBD | TBD | TBD | TBD | $0.00 | $0.00 |
| Olsen Taggart | TBD | TBD | TBD | TBD | $0.00 | $0.00 |
| Accountant | TBD | TBD | TBD | TBD | $0.00 | $0.00 |
| TOTAL PAYMENTS | $10,257.52 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 |

*Based upon Effective date in May of 2024
**Based upon Claim No. 1 (actual amount will be higher)

| PLAN OF REORGANIZATION | APPENDIX "E"  <br> *(Reorganization Budget)* |
|---|---|

|  | December 2024 | January 2025 | February 2025 | March 2025 | April 2025 | May 2025 |
|---|---|---|---|---|---|---|
| From Jensen Meat | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 |
| From Fusion Metalworks | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 | $3,708.66 |
| TOTAL INCOME | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 |
|  |  |  |  |  |  |  |
| Hopkins Default Payment | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 |
| Hopkins Monthly Payment | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 |
| Payment to Orton Industries | $602.47 | $602.47 | $602.47 | $602.47 | $602.47 | $602.47 |
| Payment to S&S Sporting Goods | $817.63 | $817.63 | $817.63 | $817.63 | $817.63 | $817.63 |
| Trustee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Olsen Taggart | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Accountant | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL PAYMENTS | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 | $7,417.32 |

| PLAN OF REORGANIZATION | APPENDIX "E" |
|---|---|
|  | *(Reorganization Budget)* |

| | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 |
|---|---|---|---|---|---|---|
| From Jensen Meat | $3,025.61 | $$3,025.61 | $$3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 |
| From Fusion Metalworks | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 |
| TOTAL INCOME | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 |
| | | | | | | |
| Hopkins Default Payment | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 |
| Hopkins Monthly Payment | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 |
| Payment to Orton Industries | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payment to S&S Sporting Goods | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Trustee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Olsen Taggart | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Accountant | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL PAYMENTS | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 |

| PLAN OF REORGANIZATION | # APPENDIX "E"<br>*(Reorganization Budget)* |
|---|---|

| | December 2025 | January 2026 | February 2026 | March 2026 | April 2026 | May 2026 |
|---|---|---|---|---|---|---|
| From Jensen Meat | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 |
| From Fusion Metalworks | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 | $3,025.61 |
| TOTAL INCOME | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 |
| | | | | | | |
| Hopkins Default Payment | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 | $2,039.63 |
| Hopkins Monthly Payment | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 | $4,011.59 |
| Payment to Orton Industries | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payment to S&S Sporting Goods | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Trustee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Olsen Taggart | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Accountant | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL PAYMENTS | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 | $6,051.22 |

| PLAN OF REORGANIZATION | APPENDIX "E" |
|---|---|
| | *(Reorganization Budget)* |

|  | June 2026 |
|---|---|
| From Jensen Meat | $0.00 |
| From Fusion Metalworks | $0.00 |
| TOTAL INCOME | $0.00 |
|  |  |
| Hopkins Default Payment | $0.00 |
| Hopkins Monthly Payment | $0.00*** |
| Payment to Orton Industries | $0.00 |
| Payment to S&S Sporting Goods | $0.00 |
| Trustee | $0.00 |
| Olsen Taggart | $0.00 |
| Accountant | $0.00 |
| TOTAL PAYMENTS | $0.00 |

***Balloon payment due

| PLAN OF REORGANIZATION | APPENDIX "E" *(Reorganization Budget)* |
|---|---|